IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROBERT L. COLLINS BEY,

                Plaintiff,

v.                                                                        OPINION and ORDER

ANTHONY ASHWORTH, GARRIE TRATTLES,               17-cv-784-jdp
TIM DOUMA, and MICHAEL MEISNER,[1]

                Defendants.

---

      Plaintiff Robert L. Collins Bey, appearing pro se, is an inmate currently incarcerated at Wisconsin Secure Program Facility. He alleges that officials at Columbia Correctional Institution violated his constitutional right to due process in a disciplinary proceeding that led to him being placed in segregation for about a year. He contends that there were numerous procedural problems with the proceedings, such as being given insufficient time to prepare, not being allowed to have his witnesses attend the hearing, and being convicted on insufficient evidence. He brings claims against the hearing examiners who he says were biased against him for holding the hearing despite those procedural problems and for falsely recounting the evidence against him. He also brings claims against supervisory officials who reviewed his disciplinary appeal and an administrative grievance about the hearing.

      Defendants have filed a motion for summary judgment, Dkt. 29, which I will grant in part and deny in part. There are disputed issues of fact regarding the hearing examiners' actions during the hearing that could lead a reasonable jury to conclude that the examiners were biased

---

[1] I have amended the caption to reflect the proper spelling of defendants Ashworth's and Trattles's names as reflected in their submissions.

against Collins Bey. But Collins Bey fails to show that the supervisory officials turned a blind eye toward this potential bias, so he cannot succeed on claims against the supervisory officials.

UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted.

Plaintiff Robert Collins Bey is currently incarcerated at Wisconsin Secure Program Facility (WSPF), but the events relevant to this case took place while Collins Bey was at Columbia Correctional Institution (CCI). All of the defendants were employed at CCI: Anthony Ashworth was a corrections unit manager, Garrie Trattles was a captain, Michael Meisner was the warden, and Tim Douma was the deputy warden. The other prison officials mentioned below are not defendants.

On August 28, 2011, officer Tetzlaff wrote a conduct report against Collins Bey for violating Wis. Admin. Code § DOC 303.12 ("Battery").[2] *See* Dkt. 33-1, at 1. In the report, Tetzlaff stated that he heard yelling coming from a cell that housed four inmates: Collins Bey, Mario Pineda-Gaeta, Brian Goodson, and another unnamed inmate. When Tetzlaff arrived at the cell, he saw Collins Bey jumping into his bunk. Pineda-Gaeta had a cut on his head and right eye and was yelling, "Get me out of here." *Id.* Tetzlaff removed Pineda-Gaeta from the cell to receive medical attention. Lieutenant Berkebill then took photos of Pineda-Gaeta's wounds: the photos show a bleeding cut or abrasion on Pineda-Gaeta's head, scratches on his

---

[2] The DOC administrative code regulations have been revised since the time of the case. All references to the administrative code in this opinion are to the 2006 version of the code. *See* Dkt. 31.

left shoulder, and an abrasion around his left eye, with that eye bloodshot. *Id.* at 22–23. Pineda-Gaeta said that Collins Bey hit him and tried to put fingers in his eyes.

Collins Bey says that he did not attack Pineda-Gaeta. He now says that before the incident, Pineda-Gaeta had been saying that he wanted to harm himself. The day of the incident, Collins Bey was on his bunk resting before he heard a loud noise as if someone had hit the cell door. He turned to see Pineda-Gaeta at the cell door yelling to unit staff that he wanted to go to observation, and he began hitting himself and scratching his head and face. Collins Bey asked Pineda-Gaeta what he was doing, and Pineda-Gaeta responded "that he's going to obs." (Collins Bey did not offer this explanation at the time of the incident or the hearing.)

The next day, Collins Bey was given a copy of the conduct report and a "Notice of Major Disciplinary Hearing Rights" form. He also was assigned a staff advocate, Mary Leiser, to help him understand the charges and to help in preparation and presentation of his defense, including by gathering evidence and testimony. Collins Bey requested that Pineda-Gaeta, Goodson, Tetzlaff, and Berkebill attend the hearing. Captain Donald Morgan reviewed these requests. *See id.*, at 5.

The parties appear to dispute exactly how Morgan responded to the requests, but I'll credit Collins Bey's version because it is reasonably supported by the form Morgan used to explain his response. *Id.* Collins Bey says that Morgan initially approved all four witnesses but then, a day before the hearing, changed his mind about Pineda-Gaeta and Berkebill. Morgan stated that Pineda-Gaeta could not attend because of a risk to Pineda-Gaeta's safety; and Berkebill was not available because of his work schedule. Instead, both witnesses provided written statements to Leiser. Pineda-Gaeta's statement was in Spanish and was signed but

3

unsworn; a translator translated it into English for purposes of the hearing: it stated that Collins Bey attacked him.

Collins Bey challenges the authenticity and admissibility of Pineda-Gaeta's statement both at the hearing itself and in this lawsuit. If what Collins Bey means is that there isn't proof that Pineda-Gaeta made the statement or that the translation is accurate, that isn't really the relevant issue in this case: the question is how defendants responded to the record before them. Institution complaint examiner Ellen Ray declares that the documents submitted are an accurate copy of the disciplinary hearing record, *see* Dkt. 33, so I may consider Pineda-Gaeta's statement for the effect that it had on defendants. Whether the statement was properly allowed in the disciplinary hearing under DOC regulations is an issue I'll discuss below.

Defendants Ashworth and Trattles were assigned as the Adjustment Committee members for the disciplinary hearing on the conduct report. The hearing was held on September 9, 2011. Among the evidence presented was Pineda-Gaeta's translated statement, photos showing Pineda-Gaeta's injuries, Tetzlaff's conduct report stating that he saw Collins Bey jump into his bunk and his testimony that he had nothing to add to what was in the conduct report, a written statement from Berkebill stating that he examined Collins Bey's hands and did not see any marks, and testimony from inmate Goodson stating that he did not witness the incident because he was sleeping. Collins Bey was present at the hearing and he provided a written statement and supplement to that statement. In his statements, Collins Bey said that he didn't attack or fight with Pineda-Gaeta. But he did not include the version of events that he now provides in this lawsuit, about how he saw Pineda-Gaeta injure himself to get taken to observation. He said that there was no evidence to corroborate Pineda-Gaeta's story, such as injuries to Collins Bey or blood on Pineda-Gaeta's bunk. And he raised various

4

procedural problems with the proceedings: that he wasn't given enough time to get answers to written questions for Pineda-Gaeta or Berkebill because their attendance was canceled only a day before the hearing, advocate Leiser didn't help him as required by the DOC regulations, he wasn't able to call or question Pineda-Gaeta, and the security rationale for keeping Pineda-Gaeta didn't make sense because Collins Bey would be handcuffed at the hearing,

Collins Bey says that at some point during the hearing, Ashworth and Trattles told him that he had admitted to the battery. Collins Bey says that he did not admit to the battery. Defendants say that Ashworth and Trattles did not make this statement to Collins Bey. Collins Bey told Ashworth and Trattles that Leiser had a conflict of interest in being his advocate and that's why she didn't help him. Ashworth and Trattles told him that they didn't think that there was a conflict.

At the conclusion of the hearing, Ashworth and Trattles found Collins Bey guilty of battery. They issued a written statement of their reasoning, which included a statement noting "that the inmate admits to 303." Defendants say that this is a typo caused by them overwriting the report from the previous hearing, and that they did not believe that he had admitted to the battery. Collins Bey says that after Ashworth and Trattles assessed him a 360-day disciplinary-segregation penalty, they told him, "Now you can go back to Boscobel where you belong." Dkt. 42, at 7, ¶ 41. WSPF is located in Boscobel.

Collins Bey appealed the disciplinary ruling to defendant Deputy Warden Douma arguing that there was insufficient evidence to convict him, along with procedural violations at his disciplinary hearing, including that the written decision was incorrect by stating that he admitted guilt. But he did not include the facts he raises now about Ashworth and Trattles telling him at the hearing that he had admitted to the battery or that he could go back to

5

Boscobel where he belonged. Douma denied the appeal, stating that Pineda-Gaeta's statement and the photos of the injuries were sufficient to find Collins Bey guilty. Douma also stated that there were no due process violations.

Collins Bey followed with an inmate grievance stating that Leiser refused to do anything to help him prepare for the due process hearing, that he did not receive statements and photos from the alleged victim prior to the hearing, and that Douma did not address all of the issues he brought up on appeal. The institution complaint examiner rejected the grievance for failing to asset a procedural error in the proceedings, and that rejection was upheld by defendant Warden Meisner.

Collins Bey also says that Douma twice made threatening remarks to him: in 1999, when Collins Bey first arrived at CCI, Douma told him that he had a "nice little hell hole in Boscobel [where WSPF is located]" waiting for Collins Bey because Collins Bey was a "cop killer."[3] Dkt. 42, at 2, ¶¶ 10–11. After serving about 11 years at WSPF, Collins Bey returned to CCI in August 2011. Within a week of his return, Douma told him "someone screwed up sending [Collins Bey] back to CCI, and he thought that they had an understanding that he was not wanted at CCI." *Id.* at 2, ¶ 13.

ANALYSIS

Collins Bey brings Fourteenth Amendment due process claims against defendants Ashworth and Trattles (the examiners for his conduct report hearing), defendant Douma (who

---

[3] Collins Bey states that he was wrongfully convicted of killing two police officers.

considered his disciplinary appeal), and defendant Meisner (who rejected his inmate grievance about the hearing).

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. To prevail on a § 1983 procedural due process claim, a plaintiff must demonstrate that he: (1) has a cognizable property or liberty interest; (2) has suffered a deprivation of that interest; and (3) was denied due process. *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010).

The Supreme Court has explained that a prisoner's cognizable liberty interests "will be generally limited to freedom from restraint which . . . imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483–484 (1995). A period of segregated confinement may be "atypical and significant" "if the length of segregated confinement is substantial and the record reveals that the conditions of confinement are unusually harsh." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697–98 (7th Cir. 2009) (holding that a prisoner's confinement in segregation for 240 days may implicate a liberty interest). Defendants say that for purposes of summary judgment, they do not dispute that Collins Bey's sentence of 360 days of disciplinary segregation was atypical and significant hardship. But the parties dispute whether Collins Bey received all the process was due.

## A.  Disciplinary hearing

As I explained to the parties in screening the complaint, Collins Bey is entitled to only "'informal, nonadversarial due process.'" Dkt. 31, at 9 (quoting *Westefer v. Neal*, 682 F.3d 679 (7th Cir. 2012)). This means that Collins Bey is entitled to: notice of the reasons that prison

officials seek administrative confinement; time to prepare for the administrative review; an opportunity to present his views to a neutral decisionmaker; and a decision supported by some evidence. *Id.* at 684–85; *Jones v. Cross*, 637 F.3d 841, 845 (7th Cir. 2011). Collins Bey continues to argue that he was entitled to more elaborate process, but he is incorrect: the *Westefer* line of cases continue to be the standard by which this type of due process claim is considered. *See, e.g.*, *James v. Pfister*, 708 F. App'x 876, 879 (7th Cir. 2017) (acknowledging that a transfer to disciplinary segregation affords inmates the informal process described in *Westefer*).

Collins Bey also points to various DOC procedural rules that he says were violated before and at his hearing. For instance, he contends that his advocate Leiser did not help him prepare for the hearing, that he got only a day's notice that Pineda-Gaeta and Lt. Berkebill would not be testifying in person, that he did not get a chance to have Pineda-Gaeta answer his written questions for him, and that Pineda-Gaeta's testimony wasn't properly sworn or authenticated. But even if some of these issues constituted violations of various DOC disciplinary hearing regulations, those violations alone are not enough to not make a constitutional claim. *See, e.g.*, *Whitman v. Nesic*, 368 F.3d 931, 935 n. 1 (7th Cir. 2004); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003). Notably, Collins Bey did "not have a constitutional right to call witnesses or to require prison officials to interview witnesses" in his hearing. *Westefer*, 682 F.3d at 685. Nor does *Westefer* suggest that there is a right to help from an advocate. And even without Pineda-Gaeta's direct written statement, Ashworth and Trattles already had his statement in the conduct report. *See McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir.1999) (conduct report alone was sufficient evidence to satisfy due process).

Despite these alleged DOC-regulation violations, any reasonable jury would conclude that Collins Bey had time to prepare for the hearing, that he had an opportunity to present his

views, and that there was some evidence to uphold the verdict. This was a relatively simple case that didn't require complicated evidence: Pineda-Gaeta says that Collins Bey attacked him, Correctional Officer Tetzlaff saw Collins Bey jump back into his bunk when he arrived, and Pineda-Gaeta indeed suffered physical injuries consistent with an attack. Collins Bey denied that he attacked Pineda-Gaeta, but the version of events that Collins Bey presents now—that he witnessed Pineda-Gaeta harm himself—was not included in his written testimony for the hearing. In his written testimony, Collins Bey simply said that he didn't attack or fight with Pineda-Gaeta; he did not present his own version of events. Berkebill's written testimony confirmed Collins Bey's testimony that Collins Bey did not have any scratches or other injuries, which the committee might have considered to be evidence that favored Collins Bey. Cellmate Goodson was sleeping so he didn't see what happened. Collins Bey doesn't explain how the evidence would have been different had he had more time to prepare or had he received better assistance from Leiser. There isn't anyone who would be able to vouch for either Pineda-Gaeta's or Collins Bey's version of events. Ultimately, Collins Bey is correct that the guilty verdict is not supported by overwhelming evidence, but it's easily enough to satisfy the "some evidence" standard.

That leaves the question whether Collins Bey received a decision from unbiased decisionmakers. In the prison disciplinary context, adjudicators are "entitled to a presumption of honesty and integrity," and "the constitutional standard for improper bias is high." *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Because Collins Bey has the burden of proving a due process violation, he needs to provide evidence showing that there is a dispute of fact on this question. The theory that I allowed Collins Bey to proceed with is, in part, related to the procedural violations: Ashworth and Trattles showed their bias against him by holding the

hearing despite multiple procedural violations, which suggests that they did not intend for him to receive a fair hearing under the rules that the DOC has set for itself. Collins Bey also alleges that they falsely recounted the evidence they received by falsely stating that Collins Bey admitted to the battery and that Tetzlaff was an eyewitness to the incident.

Particularly given the presumption of honesty for hearing examiners discussed in *Piggie*, the alleged procedural violations are not enough to establish Ashworth's or Trattles's bias. To start with, Ashworth or Trattles can be responsible only for issues raised to them at the hearing. Collins Bey argued to Ashworth and Trattles that Leiser had a conflict of interest leading her to not help him. Ashworth and Trattles concluded that there wasn't a conflict and Collins Bey didn't explain a rationale for there being a conflict. He did argue that Leiser didn't help him by gathering other evidence such as photos of Pineda-Gaeta's bunk, but he fails to plausibly argue how any other evidence could have helped him. As I stated above, there wasn't overwhelming evidence corroborating Collins Bey's guilt. But there's no suggestion that any evidence Leiser could have helped him obtain would support his version of events, in which Pineda-Gaeta harmed himself—a version of events that he didn't even raise at the hearing.

Likewise, Collins Bey argues that Pineda-Gaeta should have testified in person and that his unsworn, translated statement shouldn't have been admitted. But Ashworth and Trattles didn't excuse Pineda-Gaeta from testifying; non-defendant Captain Morgan did. The parties dispute whether the decisions about Pineda-Gaeta testimony complied with Wis. Admin. Code § DOC 303.81 ("Due process hearing: witnesses"), which explains when a witness may be excused from live testimony and when to allow a written statement instead. Collins Bey says that there was no security risk to Pineda-Gaeta justifying his absence, and although we do not have a full record of Captain Morgan's reasoning, I'm inclined to agree with Collins Bey. That

regulation appears to be aimed at allowing confidential informants to avoid being identified at a hearing. There's no reason to think that Pineda-Gaeta's safety would be jeopardized more by being present at the hearing than by submitting a written statement—I assume that his safety at the hearing itself could have been guaranteed. But even assuming that Ashworth and Trattles incorrectly applied the regulation in allowing Pineda-Gaeta's translated written statement instead of his in-person testimony, an incorrect decision isn't necessarily a biased one. This evidentiary ruling doesn't suggest that Ashworth and Trattles were biased against Collins Bey.

Regarding Collins Bey's assertion that Ashworth and Trattles falsely called Tetzlaff an eyewitness to the incident, Tetzlaff was indeed an eyewitness to the tail end of the incident. Tetzlaff's statement that he saw Collins Bey jump into his bunk when he arrived at the cell is evidence that Collins Bey was attempting to get way from Pineda-Gaeta before Tetzlaff saw him. So that's not evidence of Ashworth's or Trattles's bias either.

But that still leaves the more direct statements from Ashworth and Trattles that Collins Bey says shows bias on their part. It's undisputed that the written disciplinary decision included a note "that the inmate admits to 303." Defendants say that this was entered on the form in error. The contemporaneous evidence supports defendants' position, because it was clear that Collins Bey was denying the charge, and Ashworth and Trattles did not immediately end their deliberations with his purported admission. Instead they went on to compare the credibility of the disputed testimony before concluding that Pineda-Gaeta was telling the truth and that Collins Bey was not.

Collins Bey now says that Ashworth and Trattles also stated during the hearing that he had admitted to the battery, even though he had not. Collins Bey also says that when they sentenced him they told him, "Now you can go back to [WSPF] where you belong." Dkt. 42,

11

at 7, ¶ 41. These statements would suggest that they held animus toward Collins Bey and that they fabricated the admission of guilt.

Defendants argue that Ashworth or Trattles did not make these statements, but they do not provide evidence such as supplemental declarations explicitly denying that they made those statements. Instead, they argue that "[t]here is no evidence to support the plaintiff's assertion that he heard Ashworth and Trattles say that the plaintiff admitted to the charges," Dkt. 45, at 23–24, ¶ 35, and that the statement about Collins Bey going back to Boscobel "is a self-serving statement with no factual support," *id.* at 11–12, ¶ 18. As defendants should be well aware, this isn't a proper objection to affidavit testimony describing a firsthand experience. Collins Bey supports his proposed findings with his affidavit, Dkt. 42, and "uncorroborated self-serving testimony, if based on personal knowledge or firsthand experience, may prevent summary judgment against the non-moving party, as such testimony can be evidence of disputed material facts." *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010) (citation and quotation marks omitted).

Collins Bey's affidavit statements about the comments by Ashworth and Trattles aren't inadmissible under the "sham affidavit" rule, which prohibits a witness from contradicting prior sworn testimony with a later affidavit. *See, e.g., Cook v. O'Neill*, 803 F.3d 296, 298 (7th Cir. 2015). But any reasonable factfinder would likely apply a similar principle to the facts here. The newly alleged statements by Ashworth and Trattles were conspicuously missing from Collins Bey's disciplinary appeal or grievance, in which he quite thoroughly listed his complaints with the disciplinary hearing. I doubt that a reasonable jury would find Collins Bey credible given that he failed to mention these statements until eight years after the events in question. Nor did Collins Bey proffer his alternate theory of how Pineda-Gaeta harmed himself

to get to observation status until this lawsuit. Nonetheless, this court's role at summary judgment is not to gauge Collins Bey's credibility. Collins Bey has admissible evidence that Ashworth and Trattles said these things. And if the jury believes Collins Bey's version of events, it could reasonably infer that Ashworth and Trattles were indeed biased against him and that they thought he belonged in segregation no matter what the evidence showed, going so far to fabricate an admission as part of their written decision.

Defendants argue that "the dispute is immaterial because there was enough evidence to find Collins Bey committed the charged offense without any admission of guilt." I agree that there is at least "some evidence" of Collins Bey's guilt no matter what Ashworth or Trattles said to him. Between Pineda-Gaeta's statement and injuries and Tetzlaff's statement that Collins Bey jumped into his bunk when he arrived, the contemporaneous record has ample evidence of Collins Bey's guilt, although the evidence is not so strong that a finding of guilt was the only reasonable outcome. But the "some evidence" requirement is only one of the procedural guarantees that Collins Bey receives under the informal process due to him under *Westefer*. The question is whether Collins Bey was harmed by having biased decisionmakers, using a harmless error analysis. *Piggie,* 344 F.3d at 678 ("harmless error analysis applies to prison disciplinary proceedings."). The due process violation here was not harmless: a reasonable neutral decisionmaker could have acquitted Collins Bey on the hearing evidence. So I will deny defendants' motion for summary judgment on the merits of these claims.

Defendants also argue that they are entitled to summary judgment under the doctrine of qualified immunity, stating that "Collins Bey appears to argue that he was entitled to protections above and beyond informal due process. No existing precedent requires that the Defendants provide anything more than informal due process." Government officials are

13

entitled to qualified immunity unless their conduct violated a federal statutory or constitutional right, and the unlawfulness of their conduct was "clearly established at the time." *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018).

I'll reject the qualified immunity argument with regard to defendants Ashworth and Trattles because this isn't a case about Collins Bey receiving more than informal process; it's clearly established that Collins Bey had the right to unbiased decisionmakers at his hearing. So I'll deny defendants' motion for summary judgment on the claims against Ashworth and Trattles, and the case will proceed to trial on those claims.

## B. Disciplinary appeal and inmate grievance

Collins Bey also brings due process claims against defendant Douma for denying his disciplinary appeal and against defendant Meisner for denying his inmate grievance about the hearing. In granting Collins Bey leave to proceed on these claims, I stated that these supervisory officials could be held liable for their own complicity in Ashworth and Trattles's decision by approving it. Dkt 16, at 2–3 (quoting *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012) (supervisors could be personally involved in a constitutional deprivation if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see")). But I warned Collins Bey to win on these claims, he would have to show that Douma and Meisner believed that Ashworth and Trattles were biased and chose not to intervene; it would not be enough to show that he did not commit the battery, or that defendants were negligent in reviewing the appeal or grievance.

At summary judgment, Collins Bey fails to show that Douma and Meisner turned a blind eye to Ashworth and Trattles's bias. The appeal and grievance records show that Collins Bey highlighted various procedural problems with the conduct report hearing, but he did not

14

specifically highlight bias on the part of Ashworth and Trattles. Nor did he tell Douma or Meisner that Ashworth and Trattles told him during the hearing that he had admitted to the battery and that he was going to Boscobel where he belonged. So no reasonable jury could conclude that Douma and Meisner squarely confronted the issue of decisionmaker bias and ignored it.

Collins Bey states that Douma made threatening comments to him in 1999 about going to a "hell hole in Boscobel" for being a "cop killer" and in August 2011 about him not being wanted at CCI. That might indicate Douma's own bias against Collins Bey, but that isn't a claim that I allowed Collins Bey to proceed on in this case. And in any event, under *Westefer* Collins Bey has no due process right to a disciplinary appeal, much less a procedurally sound one. So I'll grant summary judgment to defendants on these claims.

ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment, Dkt. 29, is GRANTED in part and DENIED in part.

2. Defendants Douma and Meisner are DISMISSED from the case.

3. The clerk of court is directed to set a scheduling conference with Magistrate Judge Stephen Crocker to set a new trial date for plaintiff's claims against defendants Ashworth and Trattles.

Entered September 17, 2020.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge